UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PETER WICKER,

        Petitioner,

                                    Case No. 1:05-cv-402

v.

                                    Hon. Wendell A. Miles

CARMEN PALMER,

        Respondent.
_____/

OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

This matter is before the court on Petitioner Thomas Peter Wicker's Objections to United States Magistrate Judge Hugh W. Brenneman, Jr.'s Report and Recommendation (R&R) dated August 11, 2008, recommending that Petitioner's petition for writ of habeas corpus be denied. Petitioner has filed objections to the R&R. For the reasons that follow, the court overrules Petitioner's objections and adopts the Magistrate Judge's report and recommendation.

This court is required to make a de novo review upon the record of those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1)(B). The court may accept, reject or modify any or all of the magistrate judge's findings or recommendations. Id.

A federal district court may grant a petition for writ of habeas corpus only if the petitioner's claims were presented to the state courts and the decision of the state court was (1) contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or (2) was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The state court's application of Supreme Court precedent must be

"objectively unreasonable," not merely "incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003). The court must analyze Petitioner's objections under this standard. 28 U.S.C. § 2254(d)(1),(2). .

Petitioner was convicted after a jury trial in the Saginaw County Circuit Court of assault with intent to cause great bodily harm less than murder and possession of a firearm during the commission of a felony. He was found not guilty of home invasion. He was sentenced as an habitual offender to life imprisonment for the assault conviction and two years for the felony-firearm conviction. In his petition for habeas corpus relief, Petitioner raised six claims, all of which the Magistrate Judge found either lacked merit or were procedurally defaulted. Petitioner now objects only to the Magistrate Judge's findings with regard to the following claim:

> Petitioner was denied his constitutional right to present a defense and to the effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial attorney failed to present the testimony of two witnesses, one who was with the complainant at the time the complainant claimed that the incident occurred and the other who stated the complainant told him Petitioner did not shoot at [the complainant].

Relevant background

**A. Trial**

At Petitioner's trial, Anthony Thomas testified that on March 25, 1998, a man approached his automobile and stated that "I'm Peter Rabbit. I kill you. I kill your mama. I kill whoever." (Tr. II, 21). FBI agent, Paul Cowley, testified that on March 25, he and agent Van Horn observed three men standing beside Thomas's car, and one of the men was assaulting Thomas. Agent Cowley testified that one of the men was apprehended. Thomas advised Agent Cowley that the assaulter was Peter Rabbit. (Tr. II, 130-132).

Thomas and Rob Mason both testified that just before midnight on April 29, 1998, they

arrived at Mason's house in separate cars. (Tr. II, 25). Thomas testified that three or four men who were lurking in the darkness opened fire on Thomas' car. (Tr. II, 32). Thomas recognized Petitioner as one of the shooters. (Tr. II, 28-30). Thomas was able to escape from his car uninjured and flee. Mason testified that when he and Thomas arrived at Mason's house, he saw Petitioner and some other men who began shooting from everywhere. Mason got out of his car and laid down on the ground. He saw Thomas run away from his car. (Tr. II, 88). When the shooting stopped and the shooters left, Mason got back into his car. He drove down the street until he observed some police officers, and he stopped and reported the incident. (Tr. II, 89). Police Officer Erik Skabardis testified that he and his partner were speaking to a group of men standing on the sidewalk when Mason drove up and reported the incident. Mason appeared excited and scared. He identified Peter Rabbit as one of the shooters. (Tr. II, 150). The officers followed Mason back to Mason's house. (Tr. II, 139). At Mason's house, Officer Skabardis observed Thomas' car parked in the driveway. The windows of the car were smashed and there were bullet holes in the body of the car. (Tr. II, 132-45). Mason's house was ransacked. (Tr. II, 143-45).

  Tracy Young testified that she was Petitioner's friend, and that on April 29, 1998, she and Petitioner had been fishing from 4:00 to 9:00 p.m. Afterwards, they went to Petitioner's grandmother's house until 11:30 p.m., and then to Ms. Young's apartment. Petitioner stayed at her apartment for the rest of the night. (Tr. III, 3-6). Petitioner's grandmother testified that Petitioner and Ms. Young arrived at her house at about 8:30 or 9:00 p.m. and stayed until 11:00 p.m. or midnight. (Tr. III, 12-15).

  Petitioner testified that his nickname was Peter Rabbit. He stated that in the afternoon of

April 29, he went fishing with Tracy Young.  Later, he and Young went to Petitioner's grandmother's house, where they stayed until 11:30 to midnight.  When they left, they returned to Young's apartment, where Petitioner remained until the next day.  (Tr. III, 23-27).  Petitioner denied any involvement in the shooting incident at Mason's house.  (Tr. III, 24, 32).

### B. Ginther hearing

Following his conviction, Petitioner filed a motion for new trial, raising a claim of ineffective assistance of trial counsel.  The trial court held a Ginther hearing in December 1999.[1]  At the hearing, Charles Brooks testified that he was Petitioner's good friend, and that prior to Petitioner's trial, he met Thomas at a barbershop.  During his conversation with Thomas, Thomas stated that Petitioner was not the person that shot him, but that he had made a deal with Police Detective Vince Sanchez to testify against Petitioner in exchange for the dismissal of a drug charge pending against Thomas.  Brooks informed Petitioner of his conversation with Thomas.  Detective Sanchez testified that he was not aware of any state or federal drug charges against Thomas, and denied making any deals with Thomas in order to get Thomas to testify against Petitioner.  In addition, Paul Cowley, a special agent with the FBI, testified that he was not aware of any potential or existing state or federal drug charges against Thomas.

Barry Siler testified at the Ginther hearing that Thomas and Mason came to his house around 9:00 to 10:00 p.m. on April 29, 1998.  (Motion Tr. I, 88-89).  They arrived in Mason's car, and stayed until Mason received a call on his cell phone that his house and Thomas' car had been shot up.  Mason did not want his own automobile to be shot up, so Siler drove Mason and

---

[1] People v. Ginther, 212 N.W.2d 922, 924, 390 Mich. 436, 442 (Mich. 1973) (holding that "[w]hen a defendant asserts that his assigned lawyer is not adequate or diligent . . . the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions."

Thomas back to Mason's house.  (Motion Tr. I, 89, 101, 108).  When they arrived, no one was at Mason's house except Rudy Liddell, who had made the call to Mason.  (Motion Tr. I, 108).  Siler left before the police arrived.  (Motion Tr. I, 109).  It does not appear that Rudy Liddell testified at the Ginther hearing; had ever given a statement to police authorities; or discussed the matter with Petitioner.  Siler also testified that, at the time of the Petitioner's trial, a writ was issued to transfer Siler to the county jail, where he spent ten days but was never called to testify.  (Motion Tr. I, 104-05).  The record does not show that a such a writ was issued, or that either side anticipated calling him to testify.  (Motion Tr. I, 112-14).

## Standard of Review

The district court reviews de novo those portions of a Report and Recommendation to which specific objections are made.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  The court may accept, reject or modify any or all of the Magistrate Judge's findings or recommendations.  28 U.S.C. § 636(b)(1).

## Discussion

Petitioner claims that his trial counsel was ineffective for failing to interview and present the testimony of Siler and Brooks at his trial.  After the Ginther hearing, the trial court found that counsel's failure to interview Siler and Brooks fell below an objective standard of reasonableness, but that Petitioner had not been prejudiced by counsel's failure.  The trial court reasoned that Brooks' testimony would have been refuted by the testimony of Detective Sanchez and Special Agent Cowley that during the relevant period there were no drug charges pending or being investigated against Thomas that could have induced him to falsely testify against Petitioner.  The trial court also found that Siler's testimony was incredulous in light of the

5

testimony of Thomas, Mason, Officer Skabardis, other police officers and spectators. (Docket #30, 2/1/00 Opinion and Ord., Saginaw County Circuit Court, 6). The trial court's decision was affirmed by the Michigan Court of Appeals. (Mich. Ct. App. Opinion, 1-2).

The Magistrate Judge analyzed this claim under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984), that to establish a claim of ineffective assistance of counsel, a petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. Id. at 687-88. With regard to the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Magistrate Judge found that the trial court's finding that neither Siler nor Brooks' testimony was credible is entitled to a presumption of correctness in this court. See Patton v. Yount, 457 U.S. 1025, 1038 (1984); In re Byrd, 269 F.3d 561, 576 (6th Cir. 2001). Further, that "[g]iven the degree to which the testimony of Siler and Brooks would have been refuted or contradicted by other witnesses who testified at trial and at the Ginther hearing, Petitioner cannot establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (R&R, 27).

Petitioner first argues that the Magistrate Judge applied the wrong standard of review for an ineffective assistance of counsel claim. Relying on Kyles v. Whitley, 514 U.S. 419 (1995), he claims that:

> [t]he question is not whether the defendant would have more likely than
> not have received a different verdict with the evidence, but whether in its

>absence he received a fair trial understood as a trial resulting in a verdict worthy of confidence.

(Docket #45, Petitioner's Objections, 2).  The state court found that counsel's performance fell below an objective standard of reasonableness.  Petitioner challenges the court's finding that counsel's performance did not prejudice Petitioner.  The Supreme Court has stated that when analyzing prejudice in an ineffective assistance of counsel case, a court should not focus solely on the outcome without considering whether the result of the proceeding was unreliable or fundamentally unfair. Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. Id. at 87.  The Kyles case, cited by Petitioner, addressed the test for determining whether suppressed evidence was material under Brady.  Kyles emphasized that to show materiality under Brady, the defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."   Kyles, 514 U.S. at 435.  In its analysis in Kyles, the Supreme Court adopted Strickland's prejudice standard as the materiality standard for Brady claims.  See Id. at 434; and see United States v. Bagley, 473 U.S. 667, 682 (1985) (Strickland formulation is sufficiently flexible to cover cases of prosecutorial failure to disclose favorable evidence); Brown v. Head, 272 F.3d 1308, 1316 (11th Cir. 2001) ("The prejudice component of an ineffective assistance claim and the materiality component of a Brady claim both require the same thing[.]"); Barrientes v. Johnson, 221 F.3d 741, 756 (5th Cir. 2000) (The Brady materiality standard is the same as the standard for Strickland prejudice); Clemmons v. Delo, 177 F.3d 680, 684 (8th Cir. 1999); Johnson v. Scott, 68 F.3d 106, 109-110 (5th Cir. 1995)("The materiality

standard under Brady v. Maryland is identical to the prejudice standard under Strickland.*"* ). Petitioner's attempt to draw a distinction between the standard under Strickland and under Kyles has no merit.  The state courts correctly applied Strickland.  Accordingly, I do not find that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

Petitioner also argues that the credibility of Siler and Brooks must be decided by the jury rather than the state court judge.  Therefore, he claims, the trial court's findings after the Ginther hearing with regard to their credibility is not entitled to a presumption of correctness.  (Docket #45, Petitioner's Objections, 5-6).  The Magistrate Judge stated that the "trial court's finding that Siler and Brooks' testimony lacked credibility is entitled to a presumption of correctness." (R&R, 27).  Generally, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).  However, in Ramonez v. Berghuis, 490 F.3d 482 (6th Cir. 2007), the Court held that the inquiry into the prejudice component of an ineffective assistance of counsel claim presents mixed questions of law and fact, and therefore, is not subject to the § 254(e)(1) presumption of correctness." Id. At 490.  While the Magistrate Judge was not entitled to presume that the trial court's finding was correct, neither is the holding in Ramonez a mandate that in every case where a potential witness was not called, the petitioner is entitled to a new trial where he may present that witness.  The question is not whether this court believes or disbelieves the testimony that the post-conviction hearing witnesses provided.  Rather, it is a question of whether their

8

testimony had been presented to the jury, it might reasonably have changed the outcome of the trial.

The circumstances presented here and the circumstances in Ramonez are distinguishable. The petitioner in Ramonez was convicted of home invasion and assault with intent to do great bodily harm. The jury heard the complaining witness's testimony and the petitioner's testimony contradicting that of the complaining witness. The petitioner's counsel failed to call three eyewitnesses to the incident. The Court found that the petitioner was prejudiced where the eyewitness testimony would have corroborated that of the petitioner and contradicted the complaining witness. Id. At 491. Here, the uncorroborated testimony of Brooks was totally inconsistent with the unrefuted testimony of Detective Sanchez and FBI agent Cowley that at the time of the incident there were no drug charges pending against Thomas, nor was he under investigation for drug activity, and therefore, there was no incentive for him to make a deal with police authorities. There was no evidence indicating why Detective Sanchez might wish to target Petitioner.

Siler testifed that he drove Thomas and Mason back to Mason's house, leaving Mason's car at Siler's house. This uncorroborated testimony was likewise totally inconsistent with the unrefuted testimony of police officers and other witnesses that Mason was driving his own car when he encountered the police officers on the street talking to a group of men and reported the incident.

The court finds that the state court's decision that had Brooks and/or Siler testified, the result of the proceeding would not have been different, was not contrary to or involved an unreasonable application of established federal law, nor was it an unreasonable application of

Supreme Court precedent to the facts of this case.

## Conclusion

For the reasons discussed above, the court OVERRULES the Petitioner's Objections (docket #45), ADOPTS the Report and Recommendation (docket #44), and DENIES the Petition for Writ of Habeas Corpus.

So ordered this 26th day of September, 2008.

>  /s/ Wendell A. Miles
> Wendell A. Miles
> Senior U.S. District Judge